[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10399
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:09-cr-00089-SDM-TBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAMUEL THAMAR JAMES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 9, 2011)

Before WILSON, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Samuel Thamar James appeals his conviction and 262-month sentence for possession with intent to distribute less than five grams of cocaine, in violation of 21 U.S.C. § 841(b)(1)(C). James argues on appeal that the district court's instruction on reasonable doubt misled the jury and lowered the government's burden of proof by including a subjective standard of proof. Next, James argues that the district court did not comply with the 21 U.S.C. § 851(b) requirements in sentencing him because the court failed to conduct the required colloquy regarding his prior convictions. James also argues that the district court violated the Sixth Amendment by enhancing his sentence based on prior convictions not proven to a jury beyond a reasonable doubt. Finally, James argues that the written judgment contains a clerical error, listing the incorrect statute of conviction.

I. Facts

In March 2009, Samuel Thamar James was indicted on one count of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). On July 17, 2009, the government filed an information and notice of prior convictions, pursuant to § 21 U.S.C. 851(a), alleging that James had two prior convictions, one for delivery and possession of cocaine and the other for possession of cocaine with intent to distribute. James did not contest either of the convictions alleged in the

government's information.  A jury found James guilty of the lesser-included offense of possession with the intent to distribute less than five grams of cocaine base.

The facts presented at trial were that on February 9, 2009, while in the process of attempting to stop a car that had an illegal window tint, an officer of the Tampa Police Department observed a black man with medium-length dreadlocks, wearing a black shirt, lean out the driver's side door and drop a plastic bag containing a white substance in a driveway. After the car came to a permanent stop, the officer identified James as both the driver of the vehicle and the person who dropped the plastic bag, based on his black shirt and dreadlocks.  Testing revealed that the plastic bag contained 5.8 grams of cocaine base.

Before trial, Defendant and the government submitted proposed jury instructions to the district court.  The government's instructions included a definition of reasonable doubt identical to this Circuit's Pattern Jury Instructions.[1] James submitted two possible definitions of reasonable doubt.  The first was an excerpt from the Eleventh Circuit Pattern Jury Instructions, reading "Proof beyond

---

[1] At the time of James's trial, in 2009, this Circuit was still using the 2003 edition of the pattern instructions.  This Circuit released new pattern jury instructions in August 2010.  This new instruction on reasonable doubt is substantially similar, but not identical. See Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Basic Instruction 3 (2010).

3

a reasonable doubt is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs." James's alternative definition of reasonable doubt was the same Eleventh Circuit Pattern Jury Instruction submitted by the government, which also included the above quoted language. The district court, after reviewing the parties' proposed instructions, prepared preliminary draft instructions. James's counsel reviewed the draft instructions and stated that he had no objections. The district court instructed the jury using the reasonable doubt standard from the Eleventh Circuit Pattern Jury Instructions, which had been both proposed and approved by James. Those instructions read:

> Now, the United States has the burden of proof, of proving a defendant guilty beyond a reasonable doubt. And if it fails to do so, you must find that defendant not guilty.
> But while the United States' burden of proof is a strict or heavy burden, it is not necessary that a defendant's guilt be proved beyond all possible doubt. It is only required that the United States' prove [sic]—proof exclude any reasonable doubt concerning the defendant's guilt.
> A reasonable doubt is a real doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.
> Proof beyond a reasonable doubt is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.
> If you are convinced that the defendant has been proved guilty beyond a reasonable doubt, then during your deliberations you should

4

say so. If you are not sufficiently convinced by the evidence, then during your deliberations you should say so.

After the court instructed the jury, the court called counsel to sidebar and asked, "Did I give an instruction that I said I would omit or otherwise err in the instructions?" James's counsel replied, "No, Your Honor." James's counsel later relied upon the phrase "proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs," in closing argument.[2]

During deliberations, the jury sent back a note with the question, "If we have, believe [sic], there is a possible doubt, should we return a verdict of guilty?," and the court responded with a supplemental instruction, reiterating its original reasonable doubt instruction.[3] James objected to the court's response to

---

[2] James's counsel argued that

> in order to be convinced beyond a reasonable doubt, you have to have proof that is of such strength, of such character that you would be willing to rely on it without hesitation in the most important of your own affairs.
>     When you compare that instruction, that you have to have proof of a character so convincing that you would rely upon it without hesitation in the most important of your own personal affairs, how does that square with [the police officer's] opportunity to see the individual dropping a baggie for two seconds and never sees his face?

[3] The court responded with the following supplemental instruction:

> Members of the jury, as stated in the instructions, the United States' burden is to prove each element of the alleged offense beyond a reasonable doubt. In other words, the United States' proof must exclude every reasonable doubt, but

the jury, essentially requesting that the court repeat its original reasonable doubt instruction exactly, including the last paragraph of the pattern instructions, the "subjective component." The court overruled this objection because the jury had requested an instruction on "possible doubt," rather than a mere repetition of the reasonable doubt standard.

The jury found James guilty of possession with intent to distribute less than five grams of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(C). The written judgment, filed in the case erroneously, indicated that James was convicted of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(B)(iii).

At the sentencing hearing, the judge asked whether James had any objections to the Presentence Investigation Report ("PSI"), and his counsel responded that James did not stipulate to the facts presented as to the instant case

---

not necessarily every possible doubt. A reasonable doubt is a real doubt based upon reason and common sense after careful and impartial consideration of all of the evidence in the case. If you find unanimously that the United States has proved each element of the alleged offense beyond a reasonable doubt, then your verdict is guilty.

If you find unanimously that the United States has failed to prove any element of the alleged offense beyond a reasonable doubt, then your verdict is not guilty.

Although the preceding two paragraphs refer primarily to the instructions on page 3 of the written instructions you received, you should not single out or exclude any instruction, and you should consider all of the court's instructions as a whole.

but that they had no objections in any other respects to the PSI. The judge then asked Mr. James, "Do you understand that it's these drug trafficking offenses that are hurting you here today, not the one you got convicted for, and the two – the trial in my court and then the two other convictions you have for selling?," and Mr. James responded, "Yes."

II. Reasonable Doubt Instruction

"We review jury instructions de novo to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." United States v. Hansen, 262 F.3d 1217, 1248 (11th Cir. 2001) (per curiam) (internal quotations omitted). However, where the defendant has failed to object to the instruction in the district court, we will review for plain error only. Id. at 1248. Furthermore, "[u]nder the invited error doctrine, we will generally not review an error induced or invited by a party through the submission of an incorrect jury instruction to the judge which passed on to the jury." Id. We review the response of the district court to questions from the jury for an abuse of discretion. United States v. Phaknikone, 605 F.3d 1099, 1107 (11th Cir. 2010).

Pursuant to the invited-error doctrine, because James not only failed to object to the reasonable doubt instruction in the district court but also submitted the very instruction he now challenges, we need not review his argument on

appeal.  Id.  Nonetheless, his argument is without merit because we have repeatedly approved of the definition of reasonable doubt provided in the Eleventh Circuit Pattern Jury Instructions.  See, e.g., Hansen, 262 F.3d at 1249–50 (affirming jury instructions that defined proof beyond a reasonable doubt as "proof of such a convincing character that you would be willing to rely or act upon it without hesitation in a decision involving the most important of your affairs" and stated that "it is not necessary that a Defendant's guilt be proved beyond all possible doubt.  It is only required that the Government's proof exclude any 'reasonable doubt' concerning a Defendant's guilt"); United States v. Daniels, 986 F.2d 451, 457–58, opinion readopted on reh'g, 5 F.3d 495, 496 (11th Cir. 1993) (per curiam) (rejecting a defendant's argument that the "willing to act" language in this Circuit's reasonable doubt instruction impermissibly lowers the government's burden of proof); United States v. Clayton, 643 F.2d 1071, 1074–75 (5th Cir. 1981) (finding no error in the jury instruction, "[p]roof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs").  Thus, the district court's jury instructions were proper.

Furthermore, James's challenge to the supplemental instructions provided in response to the jury's question about "possible doubt" is vague and wholly

8

without merit.  The district court's supplemental instructions were not an abuse of discretion.

III. 21 U.S.C. § 851(b)

James next argues that his sentence must be vacated because the district court failed to follow the proper procedure dictated by 21 U.S.C. § 851(b). Appellant argues that strict compliance with the mandatory language of § 851(a) and (b) is required by our circuit precedent.  James acknowledges that this Court does not automatically reverse a district court for failure to conduct the § 851(b) colloquy, but argues that despite the holding of United States v. Weaver, 905 F.2d 1466 (11th Cir. 1990), his sentence must be reversed because, unlike the defendant in Weaver, his convictions were less than five years old and thus were not barred from challenge under § 851(e).

"[F]or the court to exercise jurisdiction to impose an enhanced sentence based on prior convictions . . . the government must comply with the procedural requirements of Title 21 U.S.C. § 851."  United States v. Cespedes, 151 F.3d 1329, 1331 (11th Cir. 1998).  Under § 851, the government is required to file and serve an information, stating the prior convictions on which it seeks to rely to enhance the sentence.  21 U.S.C. § 851(a).  Once the information is filed:

9

the [district] court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

Id. § 851(b). If the defendant denies any allegation contained in the information or claims that any conviction alleged is invalid, he must file a written response to the information. Id. § 851(c)(1). The district court then must "hold a hearing to determine any issues raised by the response which would except the person from increased punishment." Id. If the defendant does not respond to the information, the court will proceed to sentencing. Id. § 851(d)(1). Finally, under § 851(e): "No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction."

In United States v. Weaver, 905 F.2d 1466, 1480 (11th Cir. 1990), a consolidated case with two appellants, one of the two appellants, Sikes, appealed the enhancement of his sentence pursuant to 21 U.S.C. § 851, based on a prior drug conviction. Sikes contended that the government failed to give adequate and timely notice of its intent to rely on a prior conviction as required by § 851(a), and that the district court failed to comply with § 851(b) because it did not inform him

10

that he was required to challenge the validity of any prior convictions underlying the enhancement of his sentence and failed to inquire whether he affirmed or denied the prior drug conviction alleged in the information. Id.

The Weaver Court first stated that "[t]his circuit has insisted upon *strict compliance* with the mandatory language of the procedural requirements of section 851(a) and (b)." Id. at 1481 (emphasis added) (citing United States v. Noland, 495 F.2d 529, 533 (5th Cir. 1974); United States v. Cevallos, 538 F.2d 1122, 1126–27 (5th Cir. 1976).[4] However, the Court immediately followed this statement by explaining that "[t]his is particularly true with respect to the timing of the government's filing with the court and service on the defendant of an information signifying the government's intent to rely on a prior drug conviction," id., thus referring solely to § 851(a).

Within that same paragraph, Weaver stated that the doctrine of harmless error does not apply to failures to comply with the requirements of § 851. Id. ("Significantly, '[t]he doctrine of harmless error does not apply' with respect to failures to follow the statutory scheme of § 851." (quoting United States v. Olson, 716 F.2d 850, 852 (11th Cir. 1983)). It is clear that this statement was referring to

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

11

§ 851(a), not § 851(b). For the reasons set forth below, we hold that this quotation from Weaver applies only to § 851(a), and not to § 851(b).

After concluding that the district court had complied with the strict compliance standard of § 851(a), the Weaver Court moved to the § 851(b) challenge, the most relevant part of Weaver for the instant case. Sikes argued that his sentence was improper because the district court failed to inquire whether he affirmed or denied the prior drug conviction alleged in the information filed by the government, as required by § 851(b). Id. at 1481–82. The sentencing transcript revealed that "the district court did not specifically ask Sikes whether he had been previously convicted," but that this omission was "understandable when considered in context." Id. at 1482. The Court outlined a series of instances in which Sikes and his counsel implicitly affirmed the prior conviction: Sikes' counsel admitted that Sikes had a prior drug conviction during opening statement; when the court reviewed the PSI during the sentencing proceeding, which discussed both the prior arrests and the prior convictions alleged in the government's information, Sikes' counsel stated that the "court should not take into consideration anything other than convictions"; during the sentencing proceeding, Sikes' counsel argued that the prior arrests should be stricken and that the PSI should state only "the number of convictions"; and the court discussed

12

doubling Sikes' sentence as a result of a conviction that occurred while Sikes was out on bond and his counsel did not object.  Id.  The Weaver court ultimately concluded that "[n]ot only did Sikes fail to object to the prior convictions contained in the PSI, but, by implication, he agreed that the prior convictions stated in the PSI were correct.  Thus, far from challenging the prior convictions, Sikes' counsel all but affirmed Sikes' previous drug convictions."  Id.

Additionally, because Sikes' prior convictions were more than five years old, any challenge to their validity was barred by § 851(e).  Id.  The Court explained that "[a] trial court is not required 'to adhere to the rituals of § 851(b) where a defendant, as a matter of law, is precluded from attacking the conviction forming the basis of the enhancement information."  Id. (quoting United States v. Nanez, 694 F.2d 405, 413 (5th Cir. 1982)).  Thus, we also upheld Sikes' enhanced sentence because it would not "be subject to successful attack in this appeal *even if that court had not done all it was required to do under the statute.*"  Id. (emphasis added).

We believe that Weaver has two separate and independent holdings. Weaver first held that where § 851(a) is complied with and a defendant is properly apprised of the underlying convictions considered to enhance his sentence, substantial compliance with § 851(b) is sufficient.  Second, Weaver held that

13

where § 851(e) bars any challenge to the validity of a conviction, a trial court is not required to conduct the § 851(b) colloquy.

While it is true that this Circuit's precedent had indicated that substantial compliance with § 851(b) might be insufficient, that precedent did not preclude Weaver's holding that substantial compliance with § 851(b) is in fact sufficient, or that use of the harmless error standard in relation to such challenges is appropriate. The cases which indicated that substantial compliance with § 851(b) might not be sufficient—United States v. Garcia, 526 F.2d 958, 961 (5th Cir. 1976), and United States v. Cevallos, 538 F.2d 1122, 1126–27 & n.9 (5th Cir. 1976)—both made these statements in dicta only. Garcia merely expressed doubt that substantial compliance would be sufficient, rather than issuing a holding about substantial compliance. See Garcia, 526 F.2d at 961 ("[I]t is doubtful that a substantial compliance [with § 851(b)] would suffice."). Moreover, the Court indicated that there had not even been substantial compliance with § 851(b) because Garcia never admitted to having been convicted of the offense identified in the § 851(a) notice. See id. at 961 ("If Garcia's admission of a narcotics conviction identified it as the offense set forth in the information it could be plausibly urged that there was a substantial compliance with the statute. But there was no identity of offenses."). Then, in Cevallos the district court failed to comply with § 851(b)

14

completely. Cevallos, 538 F.2d at 1127. Cevallos also asserted that the conviction relied on to enhance his sentence was invalid. Id. at 1125. While the Court noted that Garcia had indicated that it was doubtful whether substantial compliance would suffice, Cevallos also issued no holding on the issue, instead holding that there had not been substantial compliance at all. Id. at 1126–27 ("In Garcia the non-compliance with § 851(b) was much less egregious than the complete failure to comply with § 851(b) in the case before us. On the doubtful possibility that substantial compliance with § 851(b) would suffice, there was no such compliance here. In sentencing petitioner the District Court completely failed to comply with § 851(b), which is a prerequisite to the imposition of an enhanced sentence.") (footnote omitted). Thus, both Garcia and Cevallos involve fact situations that the Court perceived as not rising to the level of substantial compliance. Accordingly, neither case precludes Weaver's alternative holding that substantial compliance with § 851(b) is sufficient where § 851(a) has been fully complied with.

In an opinion issued just two years after Weaver, the Fifth Circuit, which issued both the Garcia and Cevallos opinions, made clear that the statements regarding substantial compliance with § 851(b) in each of those two opinions were dicta. See United States v. Garcia, 954 F.2d 273, 277 (5th Cir. 1992). In that

15

case, the defendant appealed his enhanced sentence, arguing that the district court failed to strictly comply with § 851(b), as required by Garcia and Cevallos. Id. at 276. The court responded: "Although the two Fifth Circuit cases upon which Garcia relies suggest that substantial compliance with § 851(b) is insufficient, *the statements in both cases are no more than dicta.*" Id. at 277 (emphasis added). The court "consider[ed] more significant in th[e] case the fact that Garcia never revealed . . . the basis for any challenge to his prior convictions." Id. He did not utilize § 851(c) procedures available to him to notify the court and the government of the substance of any challenge, nor did he argue that he would have raised any challenge to the prior convictions. Id. at 277–78. The court addressed the exact issue that Appellant in this case raises and stated:

> While § 851(e) would not bar a challenge to either of the prior convictions alleged in the information in this case, we find that Garcia's conduct has the same effect as the § 851(e) bar in Nanez. Garcia's failure to comply with the procedures of § 851(c), when coupled with the absence of any suggestion by Garcia (to this court or the district court) that the judge's omission precluded him from presenting a specific challenge to one or both of the prior convictions, renders harmless the judge's failure to comply with the warning component of § 851(b).

Id. at 278.

In addition to the fact that the statements regarding substantial compliance were dicta, both Cevallos and the 1976 Garcia decision occurred prior to the

16

enactment of the Sentencing Guidelines, and, thus, the defendants did not have PSIs specifically identifying their prior offenses. Now, following the enactment of the Sentencing Guidelines, a PSI is prepared for each defendant, which is reviewed both prior to and during the sentencing proceeding. Although we have not specifically stated that the advent of PSIs alone impacts what is required of a court under § 851(b), we have recognized the role of the PSI in making clear to a defendant what, if any, prior convictions have been attributed to him. See Weaver, 905 F.2d at 1482.

In the years since Weaver was published in 1990, we have published opinions following the second of the two separate and independent Weaver holdings mentioned above—i.e., that a trial court's failure to conduct the § 851(b) colloquy is not reversible where § 851(e) bars any challenge to the conviction. See, e.g., United States v. Williams, 438 F.3d 1272, 1274 (11th Cir. 2006) ("Because this provision precluded Williams from challenging the prior convictions 'as a matter of law,' the district court was 'not required to adhere to the rituals of § 851(b).' " (quoting Weaver, 905 F.2d at 1482)); United States v. Cespedes, 151 F.3d 1329, 1334 n.2 (11th Cir. 1998) ("Although the district court failed to so inquire of the Defendant at the sentencing hearing, Cespedes made no claim regarding this omission on appeal, nor could he do so since his prior

17

conviction occurred more than five years before the date of the information. 'A trial court is not required to adhere to the rituals of § 851(b) where a defendant, as a matter of law, is precluded from attacking the conviction forming the basis of the enhancement information.' ") (internal citation omitted) (quoting Weaver, 905 F.2d at 1482).

Although we have not published an opinion following the other Weaver holding—i.e., that substantial compliance with § 851(b) is sufficient where § 851(a) is fully complied with and a defendant is timely apprised of the underlying convictions to be considered to enhance his sentence—we do so today. This holding is not only sufficiently clear in Weaver itself, but a number of our sister circuits have also held that failure to comply strictly with § 851(b) is harmless error, even where a defendant could have challenged their prior convictions under § 851(e). United States v. Severino, 316 F.3d 939, 948 (9th Cir. 2003) ("Severino admitted—more than once—that he had no way to challenge the validity of the prior conviction. . . . The error was harmless."); United States v. Williams, 298 F.3d 688, 693 (7th Cir. 2002) (where both government's information and PSI disclosed convictions used for enhancement and defendant did not challenge through § 851(c) or at sentencing, "any error resulting from the district court's failure to comply with the procedures of § 851(b) was harmless

18

error"); United States v. Gaviria, 116 F.3d 1498, 1525 (D.C. Cir. 1997) (per curiam) ("Although failure to comply strictly with the statute's requirements is error, here the error was harmless.") (internal citations omitted); United States v. Gonzalez-Lerma, 71 F.3d 1537, 1541& n.4 (10th Cir. 1995) (holding that failure to comply with § 851(b) was harmless because defendant was properly put on notice that the government was seeking an enhancement and defendant concluded that no valid grounds existed for challenging the convictions or enhancement after research), overruled on other grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006); United States v. Harwood, 998 F.2d 91, 100–01 (2nd Cir. 1993) (holding that where the government filed an information identifying the conviction relied upon to enhance defendant's sentence and counsel told the court that the defendant did not dispute the conviction, "the trial judge's sentencing ritual here complied with the requirements of § 851(b)"); United States v. Campbell, 980 F.2d 245, 252 (4th Cir. 1992) ("Although the trial record does not contain a colloquy in which the district court specifically addressed each of the issues in section 851(b), we nevertheless conclude that the substantive protections underlying that subsection were provided to Campbell in this case.") (footnotes omitted); Garcia, 954 F.2d 273, 278 (5th Cir. 1992) (district court's failure to comply with § 851(b) is harmless although § 851(e) would not bar challenge of the

prior convictions because defendant did not comply with § 851(c) and did not suggest that he had a valid challenge to the prior convictions).

James has never claimed that his prior convictions listed in the information and PSI are in any way invalid, nor has he ever disputed that the two convictions cited by the government are in fact his. James did not file a written response under § 851(c) contesting the United States' properly filed information.[5] After conviction, James did not object to the PSI's description of his prior convictions or to the enhancement of his sentence based on those prior convictions. At the sentencing hearing, the district court asked James, "Do you understand that it's these drug trafficking offenses that are hurting you here today, not the one you got convicted for, and the two—the trial in my court and then the two other convictions you have for selling?," referring to the prior convictions listed in the PSI. James replied, "Yes."

As James's convictions were fewer than five years old, he was not barred from challenging them under § 851(e), unlike the defendant in <u>Weaver</u>. However,

---

[5] Additionally, during trial, the United States attempted to introduce James's prior convictions into evidence, but they were excluded because the government's notice of intent to introduce evidence, pursuant to Federal Rule of Evidence 404(b), was untimely. While the evidentiary issue is separate from the notice and colloquy requirements of § 851, we note this because it is another example of James implicitly affirming his prior convictions. James sought to exclude the admission of his prior convictions solely on the basis that notice was untimely under 404(b) and did not contest the validity of his prior convictions at that time either.

the district court enhanced James's sentence based on prior convictions clearly delineated and described in the § 851 notice (in full compliance with § 851(a)) and also in the PSI, to which the court specifically directed James's attention during the sentencing hearing. Thus, like the defendant in <u>Weaver</u>, James "all but affirmed" his prior convictions by failing to object to their use in the PSI's sentence calculation and by confirming their existence at sentencing when the district court referenced them as the reason for the severity of his sentence. Our review of the sentencing transcript reveals that the district court adequately discussed with James and his counsel the underlying convictions that were the basis of his enhanced sentence and gave ample opportunity for any objection. Rather than object, James indicated that the convictions were accurate throughout pre-trial, trial, and sentencing proceedings. Any error in not specifically asking whether he affirmed or denied the convictions was harmless error.

<u>IV. Prior Convictions Were Properly Considered for Sentence Enhancement Purposes</u>

Binding precedent forecloses James's argument that the district court erred by enhancing his statutory maximum based on prior convictions not proven to a jury beyond a reasonable doubt. <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 228–47, 118 S. Ct. 1219, 1223–33 (1998) (holding that prior convictions

21

"relevant only to the sentencing of an offender found guilty of the charged crime" do not need to be charged in an indictment or proven to a jury beyond a reasonable doubt). James concedes this point but contends that Almendarez-Torres is wrongly decided. However, Almendarez-Torres remains binding precedent. See Apprendi v. New Jersey, 530 U.S. 466, 489–90, 120 S. Ct. 2348, 2362–63 (2000) (holding that "other than the fact of a prior conviction" any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt, and explicitly stating that the Court's holding did not affect the validity of Almendarez-Torres). We have stated that "we are bound by Almendarez-Torres until it is explicitly overruled by the Supreme Court." United States v. Dowd, 451 F.3d 1244, 1253 (11th Cir. 2006).

The district court followed binding precedent and did not err in enhancing James's sentence based on his prior convictions.

V. Clerical Error

We may remand with instructions to correct a clerical error in the judgment. United States v. Massey, 443 F.3d 814, 822 (11th Cir. 2006). "Furthermore, it is fundamental error for a court to enter a judgment of conviction against a defendant who has not been charged, tried, or found guilty of the crime recited in the judgment." Id. (citation and quotations omitted).

22

Because the written judgment incorrectly states that James was convicted under § 841(b)(1)(B)(iii), rather than § 841(b)(1)(C), we remand for the limited purpose of correcting the clerical error.

Upon a thorough review of the entire record on appeal, and after consideration of the parties' briefs, we affirm in part and remand in part.

**AFFIRMED IN PART, REMANDED IN PART.**[6]

---

[6] Appellant's request for oral argument is denied as moot.